| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>POUGHKEEPSIE DIVISION<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | | **FOR PUBLICATION** |
| In re: | : | Chapter 11 |
|     JOHN S. McCLELLAND, | : | Case No.: 03-37997 (CGM) |
| Debtor. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | | |
| JOHN S. McCLELLAND, | : | |
| Plaintiff, | : | Adv. Proc. No. 07-9014 |
| -against- | : | |
| GRUBB & ELLIS CONSULTING<br>SERVICES COMPANY, GRUBB & ELLIS<br>VALUATION AND ADVISORY GROUP<br>and GRUBB & ELLIS NEW YORK, INC., | : | |
| | : | |
| Defendants. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | | |

## MEMORANDUM DECISION DENYING MOTION TO REMAND OR ABSTAIN

**A P P E A R A N C E S**

Anne J. Penachio, Esq.
575 White Plains Road
Eastchester, New York
*Attorney for the Plaintiff*

Lance Portman, Esq.
McCabe & Mack LLP
63 Washington Street
Poughkeepsie, New York
*Attorney for the Defendants*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

The Debtor commenced this action in New York State Supreme Court, Ulster County, against the Defendants (collectively, "Grubb & Ellis" or "G&E"), alleging damages of $1 million arising from an appraisal that Grubb & Ellis prepared while retained by this Court as a professional of the bankruptcy estate.

The Defendants removed the case to the United States District Court, alleging that the case is a core proceeding within the meaning of 28 U.S.C. § 157(b) "because, among other things, it is inextricably and intimately related to the administration of the estate in the Bankruptcy Case." Notice of Removal (ECF Docket No. 1), p. 2.[1] The Debtor disputes that this action is a core proceeding. (ECF Docket No. 5). The case was transferred to this Court from the District Court, by stipulation of the parties. (ECF Docket No. 2).

The Debtor has now moved to remand the case to New York State Supreme Court pursuant to 28 U.S.C. § 1452 or, in the alternative, for abstention pursuant to 28 U.S.C. § 1334(c)(1) and (2). (ECF Docket Nos. 6, 7 and 14; the "Motion"). The Defendants oppose the Motion (ECF Docket Nos. 10, 16).

For the reasons set forth in this memorandum decision, the Motion is denied. Where an estate professional is retained and paid by order of the Bankruptcy Court to perform work that is vital to the bankruptcy estate and the debtor's plan of reorganization, a subsequent claim against that professional arising from the work performed on behalf of the estate is a "core proceeding" pursuant to 28 U.S.C. § 157(b).

---

[1] Unless otherwise indicated, docket citations refer to the Adversary Proceeding, Case No. 07-9014.

## BACKGROUND

The Debtor filed this Chapter 11 case on December 19, 2003. For the past 20 years, the Debtor was engaged in management and operation of real estate in Ulster County, New York. Debtor's Affidavit Pursuant to Local Bankruptcy Rule 1007-2 (Case No. 03-37997, ECF Docket No. 5). The Debtor managed real estate through corporations in which he was either the sole shareholder or the holder of a one-third interest. With respect to the properties in which the Debtor held a fractional ownership, the remaining two-thirds was held in equal shares by brothers Anthony and Frank Longhitano (the "Longhitanos"). *Id*. at ¶2. For the five years prior to the bankruptcy filing, the Debtor was engaged in "protracted and contentious litigation with the Longhitanos involving essentially the ownership of numerous properties in Ulster and Westchester County." *Id.* at ¶3. At the time of the bankruptcy filing, litigation was pending in New York State Supreme Court, Ulster County, New York State Supreme Court, Westchester County, and the United States District Court for the Southern District of New York. The litigation between the Debtor and the Longhitanos is described in detail in the Settlement Order (defined below) in paragraphs 15 through 31. The litigation between those parties in this bankruptcy proceeding is also described in the Settlement Order in paragraphs 33 through 47.

The Debtor and the Longhitanos entered into a 39-page stipulation of settlement, dated June 16, 2004 (Case No. 03-37997, ECF Docket No. 139; the "Stipulation of Settlement"), approved by the Court by order dated July 27, 2004 (Case No. 03-37997, ECF Docket No. 155; the "Settlement Order"). According to the Debtor, the Stipulation of Settlement "essentially resolved all of the disputes among the parties and many of the disputes among Third Parties." (ECF Docket No. 6, ¶12). A key element in the Stipulation of Settlement was payment by the Longhitanos to the Debtor of his one-third net equity interest in the jointly owned real property.

According to the Settlement Order, the parties acknowledged differing beliefs as to the valuation of the properties and devised a mechanism for resolving the dispute:

> The Debtor and the Longhitanos have demonstrated that the compromise set forth in the Stipulation provides substantial benefits to the Debtor, his estate and his creditors which include, but are not limited to, the cessation of all litigation with the Longhitanos (which has been ongoing for almost six years), the waiver of the Longhitano Claims, the release by the Longhitano of administrative claims, the payment to the estate of the current fair market value of the property being transferred by the Debtor to the Longhitanos which is believed by the Longhitanos to be approximately $3,100,000.00 and which is believed by McClelland to be no less $3,100,000.00, provided, however, that **regardless of such beliefs, the fair market value is to be independently determined by an independent appraiser to be retained jointly by the Longhitanos and the Debtor**.

Settlement Order, ¶52. According to paragraph 11 and 12 of the Stipulation of Settlement:

> 11. <u>Appraiser</u>.  The parties hereby agree to the appointment of Grubb-Ellis [sic], as the appraiser to perform and furnish appraisals of the properties on Schedule B (the "Appraiser"). Subject to the acceptance by Grubb-Ellis of its retention as contemplated hereby and the execution of a standard Grubb-Ellis retention letter which the parties agree shall be executed by them, Grubb-Ellis shall execute the appraisal. The Appraiser shall perform and furnish the appraisals as hereinafter provided. The Longhitanos shall be responsible for two-thirds (2/3), and McClelland will be responsible for one-third (1/3), of the Appraiser's fees and expenses incurred in performing the appraisals hereunder. The Appraiser's engagement shall be a joint engagement for the equal and mutual benefit of the Parties. The Appraiser shall be an independent third party, shall have no *ex parte* communications with the Longhitanos, the Receiver or his agents or representatives, including Nick Russo, the managing agent, the Debtor or their respective counsel. The Appraiser shall only have contact with the Parties and the Receiver through their counsel and only at such times as bankruptcy counsel for all Parties are present . . . .
>
> 12. <u>Appraisal</u>.  Subject to the Appraiser's ability to do so, on or before forty-five (45) days following entry of the Settlement and Transfer Order, the Appraiser will complete and furnish to each of the Parties and to the Bankruptcy Judge's Chambers, a written appraisal (the "Appraisal") of the current fair market value as to each of the parcels of real property, including all structures and improvements erected thereon, identified in Schedule B annexed [to the Stipulation of Settlement] (the "Appraised Properties") as of the date the Appraisal is performed. Upon completion of the Appraisal, the Appraiser shall file an affidavit in form and substance agreed to by the parties with the Bankruptcy Court, and the Appraiser shall proffer such affidavit as his sworn

> testimony attesting to the fact that the Appraisal was or was not completed in accordance with the terms of this Stipulation and that the Appraiser had no contact with the Parties directly, had no *ex parte* contact with counsel for the Parties and only had contact with bankruptcy counsel for the Parties with bankruptcy counsel for all Parties presents.  The Appraiser will not be subject to further direct or any cross-examination.  The Appraisal shall be binding and conclusive upon the Parties . . . .

Grubb & Ellis, specifically, "Valuation and Advisory Group, Grubb & Ellis Consulting Services Company," was retained as an estate professional in the Debtor's Chapter 11 bankruptcy case, on the Debtor's application dated September 14, 2004 (Case No. 03-37997, ECF Docket No. 165). Annexed to the Debtor's application to retain Grubb & Ellis is a September 10, 2004 engagement letter signed by the Debtor's bankruptcy attorney.  The engagement letter provides:

> In the event that a party entitled to do so, makes a claim against Grubb & Ellis or any of its affiliates or any of their respective officers or employees in connection with or in any way relating to this engagement of the Appraisal, the maximum damages recoverable from Grubb & Ellis or any of its parent companies or their respective officers or employees other than for fraud or intentionally wrongful acts shall be the amount of the monies actually collected by [Grubb & Ellis] for this assignment and under no circumstances shall any claim for consequential damages be made.

On September 28, 2004, the Court signed an order retaining Grubb & Ellis as an estate professional pursuant to 11 U.S.C. §327. (Case No. 03-37997, ECF Docket No. 170).

Grubb & Ellis completed the appraisals contemplated in the Stipulation of Settlement. Based upon the appraisals, the Debtor received approximately $4 million cash. (ECF Docket No. 6, ¶20).  The Debtor's second amended plan of reorganization, which was predicated on the appraisals conducted by Grubb & Ellis, was confirmed by order dated August 24, 2005 and provided for payment of 100% of unsecured creditors' claims. (Case No. 03-37997, ECF Docket No. 266).  Article XI of the Plan, titled RETENTION OF JURISDICTION states, in relevant part:

- 5 -

> [T]he court shall retain exclusive jurisdiction over **all matters arising out of, and related to, the Chapter 11 Case** and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to: . . . (e) **hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case**; . . . (l) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case . . . [and] (o) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code[.]

(emphasis added).

The Court approved fees to Grubb & Ellis in the amount of $20,833.13 and expenses of $607.76 by order dated February 1, 2006 (Case No. 03-37997, ECF Docket No. 309). The fees awarded by the Court represent the Debtor's one-third share of the costs of Grubb & Ellis's services. The Court's award of fees and expenses followed a hearing on the Debtor's objection to the Grubb & Ellis fee request. (Case No. 03-37997, ECF Docket No. 296; hereafter, the "Objection"). The Debtor objected to payment of its share of the fees to Grubb & Ellis based only on his view of the methodology Grubb & Ellis should have used to value the "Hudson Valley Landing properties," one of the many properties included in the appraisal. The Hudson Valley Landing properties were described by the Debtor and the Longhitanos in Schedule A to the engagement letter as "33 two-family homes." The Debtor claims that Grubb & Ellis was specifically directed by the engagement letter to evaluate the Hudson Valley Landing properties as "33 two family homes" and that Grubb & Ellis instead appraised them as rental property. The Debtor asserts:

> [A]n appraisal of Hudson Valley Landing as "33 two family homes" would have resulted in an appraisal at a value far greater than as it was appraised by G&E. The Confirmed Debtor is of the opinion that an appraisal of Hudson Valley Landing as "33 two family homes" would have resulted in an appraisal of three million ($3,000,000.00) dollars more and than as it was appraised by G&E and that the Confirmed Debtor would have realized an additional one million ($1,000,000.00) dollars pursuant to the Stipulation of Settlement.

> As a result thereof, the Confirmed Debtor is of the opinion that G&E's wrongdoings resulted in damage to the Confirmed Debtor in the amount of one million ($1,000,000.00) dollars.

Objection, ¶13-14. The Debtor then made the following request, in the last numbered paragraph of the Objection:

> Confirmed Debtor respectfully requests that any award to be made by this Court in connection with the Final Fee Application; (a) be without prejudice to Confirmed Debtor's claims against G&E (which **Confirmed Debtor intends to assert in a state court of competent jurisdiction**), in which event the award should specifically provide that it shall not be a finding, or considered as a determination, that G&E's services were provided competently or that they are not objectionable; **or, in the alternative** (b) that Confirmed Debtor's objection to the Final Fee Application also be considered by this Court as a counterclaim against G&E in the amount of one million ($1,000,000.00) dollars.

Objection, ¶15 (emphasis added). The Court ruled on December 13, 2005 that the Debtor's Objection did not challenge the reasonableness or necessity of the compensation Grubb & Ellis requested. In denying the Debtor's proposed "alternative," to treat the Objection as a $1 million counterclaim to a fee request of $20,833.13, the Court stated:

> That issue is not before the Court, and it is not going to be. Because the Court declines to treat debtor's objection as a counterclaim. The Court declines to comment on the debtor's state court rights against [Grubb & Ellis], if any.

(Quoted in ECF Docket No. 6, ¶23). Immediately thereafter, the Court stated: "Grubb & Ellis should be paid for its work performed. **That is the extent of my ruling today.**" (*Id.*, ¶9 (emphasis added)).

Thereafter, on November 28, 2006 the Debtor filed a summons and complaint against Grubb & Ellis in New York State Supreme Court, Ulster County. The complaint alleges four causes of action: (1) "fraudulent and deceitful misrepresentation" in the appraisals; (2) "intentionally and wrongly conclud[ing] that the highest and best use of certain property was as rental units instead of saleable duplexes "knowing that this would result in a lower appraisal

- 7 -

value" and then refusing and consciously disregarding the consequence of its action after the opportunity to correct the allegedly "wrongful methodology;" (3) gross negligence, egregious and reckless indifference rendering the exculpatory clause in the engagement letter void and unenforceable as against public policy; and (4) substantially undervaluing 12 other properties as the result of "gross mathematical mis-calculations, improper determination of the highest and best use of the properties, failure to adjust rents or compare rents to other similar income producing properties, failure to compare income and expenses to other similar properties, failure to consider the assessed valuation of the properties, duplication of certain expenses and fees related to the operation and management of the properties" and "otherwise negligent." (Case No. 03-37997, ECF Docket No. 319, Exh. 1).  The case was removed to the United States District Court by notice of removal dated January 10, 2007 and then transferred to this Court.

## DISCUSSION

The Debtor's Motion requests remand to the state court pursuant to 28 U.S.C. § 1452(b) or abstention by this Court pursuant to 28 U.S.C. §§ 1334(c)(1) and (2). The Debtor also argues that the "law of the case" requires remand of this action to state court.

**I. Remand**

Title 28 U.S.C. § 1452(b) states that the court to which a claim or cause of action has been removed "may remand such claim or cause of action on any equitable ground." The Debtor argues that the case should be remanded to state court, citing a seven-factor test from *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).[2] The factors are:

---

[2]   That case held that a proceeding seeking a declaration regarding insurance coverage did not "arise under" Title 11 or "arise in" a case under Title 11.  Though the case was "related to" a case under Title 11 – because the outcome of the debtors' action might have an effect on the bankruptcy estate – it was not sufficiently related to the bankruptcy case for jurisdictional purposes.

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

130 B.R. at 407.

The Debtor argues that remand will aid in administering the Debtor's confirmed Chapter 11 case, because if the main case is held open it will cause him to incur additional costs and suffer delay in bringing closure to the Chapter 11 proceeding. The Debtor has not obtained a final decree in the case and continues to await the resolution of pending litigation with his pre-petition counsel. Fed. R. Bankr. P. 3022 permits entry of a final decree closing the case "[a]fter an estate is fully administered," which is not necessarily contingent upon the resolution of a stand-alone adversary proceeding. The 1991 Advisory Committee Notes to Rule 3022 list a number of factors for the Court to consider before entering a final decree, including:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

A final decree is essentially an administrative task, a docket entry reflecting the conclusion of a case for record-keeping purposes. *In re Fibermark, Inc.*, 369 B.R. 761, 767 (Bankr. D. Vt. 2007) (noting final decree does not establish jurisdictional parameters). If the estate is otherwise fully administered, the Debtor's adversary proceeding against Grubb & Ellis should not delay closing of the case. *See In re Union Home & Indus., Inc.*, 2007 WL 2938924, *5 (B.A.P. 10th Cir. Oct. 10, 2007) ("The continuation of an adversary proceeding . . . is insufficient by itself to keep a case from being considered 'fully administered.'"); *In re JMP-Newcor Int'l*, 225 B.R. 462, 465

(Bankr. N.D. Ill. 1998) (pending adversary proceeding did not warrant keeping bankruptcy case open).

Second, the Debtor contends that state law issues "clearly predominate." The Court disagrees with the Debtor's characterization of the claim. The adversary proceeding is a suit by the Debtor, arising out of a post-petition contract, against a professional retained by the bankruptcy estate and by order of this Court and relates to work performed for, and compensated from, the bankruptcy estate.

The third and fourth *Drexel* factors are not controlling here or else would not be availing to the Debtor. The Debtor's claims do not require an interpretation of unusually difficult or unsettled state law, and the facts in this case do not compel remand to the state court in the interest of comity.

Regarding the fifth factor, the Debtor claims that this action is "completely independent from the Reorganized Debtor's Confirmed Chapter 11 case." To paraphrase another court, it is somewhat disingenuous for the Debtor to attempt to pry these claims out of their bankruptcy setting. *In re Southmark Corp.,* 163 F.3d 925, 931 (5th Cir. 1999).

"Demands for jury trials in non-core proceedings have been considered a sufficient ground for an equitable remand." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. at 408. The Debtor contends that he is entitled to a jury trial under state law, and that this favors remand under the sixth *Drexel* factor. As discussed below, the Court holds that the Debtor's action against Grubb & Ellis is a core proceeding and thus, the fact that the Debtor may be entitled to a jury trial does not compel the Court to remand the case to state court.

The Debtor also argues that he will suffer prejudice because he has retained an attorney who concentrates on state court litigation, and that if he is required to pursue the matter in

bankruptcy court, he will be required to hire new counsel. The Debtor contends that his bankruptcy counsel, Anne Penachio, could not represent him because she may be called as a witness at trial. Yet the Debtor has appeared at various points in his Chapter 11 case through at least three different attorneys. Besides Ms. Penachio, the Debtor has also appeared through Marc Stuart Goldberg of M. Stuart Goldberg, LLC, and Leonard Spielberg of Harold, Salant, Strassfield & Spielberg.

Another factor weighs against remand. This court is intimately familiar with the issues in this case and the facts that gave rise to the current dispute. The Court considered and approved not only Grubb & Ellis's retention, but the Stipulation of Settlement with the Longhitanos that necessitated the employment of Grubb & Ellis in the first place. The Court monitored the progress of the valuation because it was a key component of the Chapter 11 reorganization. The Court has previously conducted at least two hearings pertaining to Grubb & Ellis's work on behalf of the estate.

## II.  This is a Core Proceeding

Title 28 U.S.C. § 1334(c) sets forth the grounds for permissive and mandatory abstention, respectively:

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, **related to a case under title 11 but not arising under title 11 or arising in a case** under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(emphasis added).

> This Circuit has held that those cases "arising under" or "arising in" Title 11 proceedings are the same as those defined as "core proceedings" under 28 U.S.C. § 157(b). *Mt. McKinley Insurance Co. v. Corning Inc.,* 399 F.3d 436, 447-48 (2d Cir. 2005). "Core proceedings" touch on issues at the heart of federal bankruptcy power, such as "the restructuring of debtor-creditor relations." *In re United States Lines, Inc.,* 197 F.3d 631, 636 (2d Cir. 1999) (citation omitted).

*Norkin v. DLA Piper Rudnick Gray Cary, LLP*, 2006 WL 839079, *3 (S.D.N.Y. March 31, 2006). *Norkin* held that the Debtor's malpractice and breach of fiduciary duty claims against his former bankruptcy counsel were core proceedings because, among other reasons, the retention agreement arose after the bankruptcy filing, and the claims were related to advice provided to the debtor in his bankruptcy proceeding. 2006 WL 839079 at *3.

The Court is required by 28 U.S.C. § 157(b)(3) to "determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." That section instructs that, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."

First, there is little doubt that the controversy is "related to" the Chapter 11 case. The confirmed Chapter 11 plan provided that this Court:

> **shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law**, including, among other things, jurisdiction to: . . . (e) hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case[.]

(Case No. 03-37997, ECF Docket No. 266, Art. XI) (emphasis added). The Court believes that this provision alone is sufficient to justify the retention of jurisdiction because it is what is provided for in the Debtor's own plan, "to the fullest extent permitted by law."

Moreover, this adversary proceeding is a core proceeding. The adversary proceeding is a suit by the Debtor, against an estate professional retained by order of this Court, pertaining to work performed for, and compensated from, the bankruptcy estate. Title 28 U.S.C. § 157(b)(2)

states that core proceedings "include, but are not limited to," 16 enumerated types of proceedings. The adversary proceeding is a core proceeding under Section 157(b)(2)(B) because it is a matter "concerning administration of the estate." Section 157(b)(2) is a non-exclusive list, and the Court also finds a core interest in adjudicating the Debtor's claims against professionals of the bankruptcy estate arising from work performed for the estate, particularly where, as here, that professional's work was instrumental in completing a settlement with the Debtor's major creditor and formed the basis for the Chapter 11 plan of reorganization confirmed by this Court. The "administration of the estate," is a specifically enumerated core proceeding in Section 157(b)(2)(B). The "administration of the estate" is most often carried out by court-appointed or court-approved professionals, and it follows that the retention of estate professionals is also a core bankruptcy function. If those professionals may be subjected to suit in another forum for the work they performed in connection with a bankruptcy case, the ability of those professionals (as well as the ability of the debtor, the court and others) to fairly administer the bankruptcy estate may be threatened. Where the lawsuit arises from work performed by the estate professional that was a critical component of the Chapter 11 reorganization, the suit against that professional constitutes a core proceeding under 28 U.S.C. § 157(b).

> When the dispute sounds in contract, the determination of whether the lawsuit is core turns on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The court can also look to the nature of the proceeding and deem it to be core if (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.

*Norkin*, *supra*, 2006 WL 839079 at *3 (citations and internal quotations omitted). To the extent the Debtor's claim in this case "sounds in contract," it is a post-petition contract that was approved by an order of this Court. More importantly, the overriding characteristic of the Debtor's action against Grubb & Ellis is the fact that is arises from work that Grubb & Ellis

- 13 -

performed as a retained professional of the bankruptcy estate.[3] The tasks performed by Grubb & Ellis were fundamental to the Debtor's reorganization, resolving the most significant issue in the bankruptcy estate and ending six years of litigation between the Debtor and the Longhitanos. The Debtor has stated that his plan of reorganization, which was proposed by him and confirmed by this Court, was "predicated" on the Grubb & Ellis appraisals. (ECF Docket No. 6, ¶20). Grubb & Ellis is now being sued by the Debtor for the work it performed in connection with the bankruptcy case. It would be difficult to view the Debtor's claims against Grubb & Ellis as unrelated to the bankruptcy case or to explain the origins of the Debtor's claims if they did not "arise in" the Chapter 11 case.

In *In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999), the Chapter 11 debtor (Southmark) filed a malpractice action in state court against Coopers & Lybrand L.L.P., the accountant to the examiner appointed by the bankruptcy court. The Fifth Circuit affirmed the findings of the lower court that "the state-law malpractice claim is a 'core proceeding'." The court first noted that "the state law origin of Southmark's claim is not dispositive," noting that 28 U.S.C. § 157(b)(3) "expressly provides that the applicability of state law to a proceeding is insufficient in itself to render it a non-core proceeding." 163 F.3d at 930. The Fifth Circuit then rejected arguments similar to those made by the Debtor in this case:

> Southmark also disputes that its claims could arise "only in the context of a bankruptcy case," inasmuch as Southmark could have sued any accounting firm that worked for it on similar grounds of disloyalty, non-disclosure and malpractice. It is somewhat disingenuous for Southmark to attempt to pry these claims out of their bankruptcy setting. Southmark's petition alleges *inter alia* claims for breaches of fiduciary duty and of the contract whose terms were approved by the bankruptcy court. Southmark prays for actual damages including return of the entire $4 million fee it paid Coopers from money belonging to the debtor's estate. The fee award was both approved by the bankruptcy court and subjected to the bankruptcy court's later disgorgement order.

---

[3] In this Court's view, it makes no difference that the parties viewed Grubb & Ellis as "an independent third party." Grubb & Ellis was retained as an estate professional pursuant to 11 U.S.C. § 327.

> In this case, the professional malpractice claims alleged against Coopers are inseparable from the bankruptcy context. A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform. *See generally* 11 U.S.C. §§ 321, 322, 324, 326-331. Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also-applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable professional malpractice standards.

163 F.3d at 930-931.  This Court agrees with the decision in *Southmark* and the District Court in *In re Billing*, 150 B.R. 563, 566 (D. N.J. 1993), *rev'd on other grounds*, 22 F.3d 1242 (3d Cir. 1994):

> A claim which attacks the competency of the debtors' representative and seeks damages as a result must be deemed "a matter concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Even if that catch-all provision is read narrowly, allegations which relate to the very heart of the bankruptcy process are within the ambit of the subsection . . . . If Congress' intent to include in the definition of core proceedings matters concerning the administration of the estate is to be given any meaning at all, it must be read to include claims that the bankruptcy was negligently or intentionally mishandled.

Thus, the Debtor's claims against Grubb & Ellis in this adversary proceeding are core proceedings.

### III. <u>Abstention</u>

For the reasons just articulated, mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply because the Debtor's claims are core proceedings. By its terms, Section 1334(c)(2) applies only to "a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11."

That leaves the Debtor's motion for permissive abstention:

> The determination that the proceeding is core does not, of course, end the inquiry. The Court may still abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) is informed by and interpreted according to "principles developed under the judicial abstention doctrines." *In re Pan American Corp.,* 950 F.2d 839, 846 (2d Cir.1991). According to those principles, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976), and may abstain only for a few "extraordinary and narrow exception[s]." *Id.* at 813 (citation omitted).

In *In re Norkin*, *supra*, 2006 WL 839079 at *4-5, Judge Cote observed of the malpractice and breach of fiduciary duty claims the debtor asserted against his former bankruptcy counsel:

> Although plaintiff's causes of action are styled as New York State law claims, they turn largely on issues that are intertwined with the bankruptcies of [the Debtor], including the propriety of [the defendant's] advice related to and leading to those proceedings. To the extent issues of New York law arise, they are in the well settled areas of professional malpractice, negligence, and breach of fiduciary duty. Retention of federal jurisdiction would not hamper efficient administration of the estate, and, if anything, would promote it, as each of the related matters is proceeding in federal court. Therefore, the Court will not exercise discretionary abstention, and will instead retain jurisdiction over the present matter.

*Id.* at *5. In view of the concerns previously expressed by this Court in finding that this adversary proceeding is a core proceeding, the Court declines to exercise discretionary abstention under 28 U.S.C. § 1334(c)(1). While the claims in this case turn on questions of state

law, those claims, and the events they are based upon, arose in the context of the Debtor's bankruptcy case.

### IV. Law of the Case

The Debtor argues that the doctrine of "law of the case" should apply. That doctrine sets forth the rule that a Court should not revisit prior rulings in subsequent stages of a litigation of the same case absent cogent and compelling reasons. *See U.S. v. Thorn*, 446 F.3d 378, 383 (2d Cir. 2006). "It is well established that 'the law of the case' does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." *Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301, 312 (2d Cir. 1979).

The Debtor's argument here is that the Court "made a decision in December 2005 not to consider the Debtor's objection to the Appraiser's application for compensation as a counterclaim." The Court's ruling in December 2005 has no bearing on whether or not the Debtor's adversary proceeding against Grubb & Ellis should be considered in this Court or in state court. The Debtor appears to be arguing that when the Court denied the Debtor's request to treat his Objection as a counterclaim, the Court endorsed the Debtor's decision to bring an action against Grubb & Ellis in state court, and the Court is now bound to return this action to state court. The Debtor mischaracterizes the Court's ruling at the December 13, 2005 hearing. In the course of the ruling at the December 13, 2005 hearing, the Court stated:

> That issue is not before the Court, and it is not going to be. Because the Court declines to treat debtor's objection as a counterclaim. The Court declines to comment on the debtor's state court rights against [Grubb & Ellis], if any.

The Court explicitly limited the statement only to the fact that Grubb & Ellis was entitled to payment for its work on behalf of the estate. The Court was very clear about the fact that it made no determination other than that the Debtor's Objection to the Grubb & Ellis fee application

- 17 -

would not be treated as a counterclaim, in part because the Debtor failed to provide the Court with any legal authority for doing so.[4]

Moreover, the Court's statement that the Debtor's claim against Grubb & Ellis "is not before the Court, and it is not going to be" was made in reaction to a statement in the Debtor's Objection, which indicated that the Debtor intended to commence a state court law suit against Grubb & Ellis:

> Confirmed Debtor respectfully requests that any award to be made by this Court in connection with the Final Fee Application; (a) be without prejudice to Confirmed Debtor's claims against G&E (which **Confirmed Debtor intends to assert in a state court of competent jurisdiction**), in which event the award should specifically provide that it shall not be a finding, or considered as a determination, that G&E's services were provided competently or that they are not objectionable; or, in the alternative (b) that Confirmed Debtor's objection to the Final Fee Application also be considered by this Court as a counterclaim against G&E in the amount of one million ($1,000,000.00) dollars.

Objection, ¶15 (emphasis added). In the first instance, the Debtor indicated in the Objection that he intended to sue Grubb & Ellis in state court, an issue that was not at that time before this or any other Court. The Debtor asked the Court "in the alternative" to "also" consider the objection as a counterclaim, and that request was denied. The Court did not make an independent assessment at the December 13, 2005 hearing as to where or whether such a claim could or should be filed and is not bound by the law of the case doctrine to return this action to state court.

---

[4] Local Bankruptcy Rule 9013-1(b) for the Southern District of New York states:

(b) *Memorandum of Law*. Unless the Court orders otherwise, the moving party shall serve and file with any motion (including a motion brought on by order to show cause) a memorandum of law setting forth the points and authorities relied on in support of the motion, divided under appropriate headings into as many parts as there are points to be determined. Unless the Court orders otherwise, each responding party shall serve and file with its papers in response to the motion an answering memorandum of law, similarly divided, setting forth the points and authorities relied on in response. Failure to comply with this subdivision may be deemed sufficient cause for the denial of the motion or the granting of the motion by default.

(emphasis added).

### V. Other Issues

The Debtor has suggested that he may have a right to a jury trial. Whether or not the Debtor may be entitled to a jury trial is a separate question from whether this adversary proceeding is a core proceeding. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d Cir. 1990); *see also* 28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.").

In *In re Enron Corp.*, 2004 WL 2912893, *2 (S.D.N.Y. Dec. 14, 2004), District Judge Richard J. Holwell declined to immediately withdraw the reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), even though one of the parties argued that withdrawal was inevitable because it had a right to a jury trial and would not consent to have the trial heard in bankruptcy court. *Id.*

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

*Id.* (quoting *In re Kenai Corp.,* 1992 U.S. Dist. LEXIS 826 at *6 (S.D.N.Y.1992)). Judge Holwell concluded:

> The point is simple: a motion for withdrawal should be denied where refusal serves the interests of judicial economy and efficiency, such as where significant pre-trial or managerial matters remain, *even if* the action will ultimately be transferred to a district court because the movant is entitled to a jury trial or to an Article III judge.

- 19 -

*In re Enron Corp.*, 2004 WL 2912893 at *2 (emphasis in original).  In this Court's view, in the interests of judicial economy and efficiency, all pre-trial matters should proceed in this Court at least until such time as this action is ready for trial.  The Court has not been asked to decide whether the Debtor is entitled to a jury trial and makes no determination at this time.

## CONCLUSION

For all of the foregoing reasons, the Debtor's motion to remand or abstain is denied.  A further pre-trial conference has been scheduled in this matter for December 11, 2007 at 11:30 a.m.

Dated:  Poughkeepsie, New York
            October 26, 2007

                                              /s/ Cecelia Morris
                                                 U. S. B. J.