*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

In re John S. McClelland,                                    Case No. 03-37997

        Debtor.

-------------------------------------------------------- X

John S. McClelland,

        Plaintiff,                                  Adv. P. No. 07-9014

    -against-

Grubb & Ellis Consulting Services Company,
Grubb & Ellis Valuation and Advisory Group
And Grubb & Ellis New York, Inc.,

        Defendants.

-------------------------------------------------------- X

**MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS AND DISMISSING THE COMPLAINT**

**A P P E A R A N C E S :**

Leonard I. Spielberg, Esq.         Lance Portman, Esq.
Harold, Slant, Strassfield & Spielberg    McCabe & Mack,LLP
81 Main Street, Suite 205          63 Washington Street
White Plains, New York 10601        Poughkeepsie, New York 12601

**CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE**

      The present adversary proceeding was brought by Plaintiff, in his capacity as an

individual debtor in a case under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

(hereafter, the "Bankruptcy Code" or the "Code"), to recover from Defendants millions of

dollars in damages that Plaintiff allegedly suffered as a result of Defendants' alleged

undervaluation of some real property in which Plaintiff once asserted an ownership interest. Defendants moved for judgment on the pleadings (the "Motion").

This case presents a question of first impression for this Court:  Where a professional is retained by Order of the Court, on application of the Debtor, and that professional's work results in the disposition of a major asset of the bankruptcy case, which achieves a 100 percent plan, may the Debtor subsequently attack the acts of that professional as grossly negligent or fraudulent?  The Court holds that Plaintiff failed to plead acts by Defendant that were so egregious and wanton as to constitute gross negligence; additionally, Plaintiff failed to plead any intent to defraud on the part of Defendants that was contemporaneous with any relevant representation.  The Defendants' motion for judgment on the pleadings is GRANTED and the complaint is DISMISSED.

### *STATEMENT OF JURISDICTION*

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(e), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984.  By Order dated August 14, 2007, this Court denied Plaintiff's motion for remand or alternatively for abstention (the "Jurisdictional Order").  In its Memorandum Decision Denying Motion to Remand or Abstain dated October 26, 2007 (the "Jurisdictional Decision"), this Court conclusively held, "Where an estate professional is retained and paid by order of the Bankruptcy Court to perform work that is vital to the bankruptcy estate and the debtor's plan of reorganization, a subsequent claim against that professional arising from the work performed on behalf of the estate is a 'core proceeding'

pursuant to 28 U.S.C. § 157(b)." The Jurisdictional Order has not been appealed, disturbed or reversed. This Court has jurisdiction to decide the Motion.

### *BACKGROUND*

Plaintiff filed a voluntary petition for relief under chapter 11 under the Bankruptcy Code on December 19, 2003. On June 18, 2004, Plaintiff signed a stipulation of settlement ("the Settlement" or the "Settlement Stipulation"). In the Settlement, Plaintiff and former business partners of Plaintiff (the "Longhitanos") agreed that the Longhitanos would pay the estate one-third the value of certain real property (the "Properties"), which would resolve extensive litigation between Plaintiff and the Longhitanos, and extinguish Plaintiff's interest in the real property. The Settlement expressly provides, among other things, that Defendants would be retained to perform appraisals of certain of the Properties, and contains the following language: "The Appraiser will not be subject to further direct or any cross-examination. The Appraisal shall be binding and conclusive upon [Debtor and the Longhitanos]." *McClelland v. Grubb & Ellis Valuation and Advisory Group et al.*, No. 09-09014, Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Exh. A, p. 26, ¶ 12.[1] The Settlement also provides that "The Appraiser's engagement shall be a joint engagement for the equal and mutual benefit of the parties," and "The Appraiser shall be an independent third party, shall have no *ex parte* communications with the Longhitanos … [or] the Debtor or their respective counsel." Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Exh. A, p. 25, ¶ 11. Defendants did not sign the Stipulation. The Court notes that the Settlement is referenced in ¶¶ 4 and 6 of the complaint dated November 28, 2006 (the "Complaint"). The Complaint is annexed to the Motion as Exhibit J.

---

[1] Hereafter, citations to docket entries in the present adversary proceeding shall be abbreviated to the docket number.

By Order dated July 27, 2004, the Court approved the Stipulation of Settlement; this Order is annexed to the Motion as Exhibit B. The Court emphasizes that the Defendants are expressly named in the Settlement as the appraisers, which predates their express agreement with Plaintiff's estate and the Longhitanos, as discussed herein.[2]

By letter dated September 10, 2004 (the "Engagement Letter"), Defendants submitted an offer to appraise various properties. The Engagement Letter was addressed to counsel for Plaintiff and the Longhitanos, and was accepted and agreed to by counsel for Plaintiff and the Longhitanos. The Engagement Letter provides, among other things, "We will use the income approach, the comparable sales approach and the replacement value approach, as we deem each approach appropriate, in determining the fair market value of each property" (the "Disputed Language"). The Engagement Letter also included a provision limiting Defendants' liability: "In the event that a party entitled to do so, makes a claim against Grubb & Ellis or any of its affiliates or any of their respective officers or employees in connection with or in any way relating to this engagement of the Appraisal, the maximum damages recoverable from Grubb & Ellis or any of its parent companies or their respective officers or employees ***other than for fraud or intentionally wrongful acts*** shall be the amount of the monies actually collected by us for this assignment and under no circumstances shall any claim for consequential damages be made" Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Exh. E (emphasis added). The Court notes that the Engagement Letter is expressly referenced in ¶ 5 of the Complaint, and is annexed thereto as Exhibit A.

By Order dated September 28, 2004, the Court retained Defendants to evaluate several parcels of real estate, so that the one-third payment could be determined (the "Retention Order").

---

[2] On Page 25, ¶ 11, the Settlement provides, "The Parties hereby agree to the appointment of Grubb-Ellis, as the appraiser to perform and furnish appraisals of the properties …"

Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Exh. D.  The Court notes that the Retention Order is expressly referenced in ¶ 3 of the Complaint.

According to ¶ 13 of the Complaint, Defendants' appraisal report was dated January 27, 2005 (the "Appraisal").

By Order dated August 24, 2005, the Court confirmed Plaintiff's second amended plan of reorganization, which provides that general unsecured creditors would receive 100 percent of their allowed claims.  *In re John S. McClelland*, No. 03-37997, Docket No. 266, Order Confirming Debtors Second Amended Plan of Reorgainzation Dated as of May 27, 2005 as Amended, Exh. A, p. 12.

In the present action, Plaintiff alleges that Defendants committed fraudulent and deceitful misrepresentation, intentional use of wrongful methodology, and gross negligence.  The lawsuit was commenced on November 28, 2006, in the Ulster County Supreme Court, removed to the District Court for the Southern District of New York, then transferred to this Court as a case related to the Plaintiff's bankruptcy case pending here.

Plaintiff argues that Defendants, in their work pursuant to the Engagement Letter and the Settlement, undervalued certain of the Properties (the "Disputed Properties"), which caused him to lose money – if the Defendants had given the Disputed Properties a higher value, then the one-third payout pursuant to the Settlement would have been higher, and Plaintiff would have been able to keep the money that was left after paying all his creditors in full.  Specifically, Plaintiff argues that the Disputed Properties were valued as rentals (their actual use at the time), instead of as units for sale, which would have yielded a higher value, and that Defendants failed to apply the other two appraisal approaches in determining the value of the Disputed Properties.

Plaintiff agrees that the Settlement was binding upon him with regard to surrendering claims against the Longhitanos, but argues that Defendants were not a party to the Stipulation, and therefore any release set forth in the Settlement is not applicable to them. Plaintiff ignores the traditional deference that is given to chapter 11 trustees, and minimizes the fact that this transaction was the central act concerning administration of his bankruptcy case, being the substance of an informal plan of reorganization, causing his creditors to be paid in full, and resolving protracted litigation between himself and the Longhitanos.

Additionally, Plaintiff distorts the role he played in this case as an individual chapter 11 debtor. Plaintiff served as debtor in possession. He owed his creditors a fiduciary duty. He met that duty by paying them 100 percent of their claims. However, now Plaintiff wishes to sue Defendants because there was not enough money left over for him.

### *RULES AND LEGAL STANDARDS*

Bankruptcy Code § 327 provides that the trustee, with the court's approval, may retain an appraiser among other professionals, that does not hold an adverse interest to the estate and is a disinterested party, for the purpose of assisting the trustee in carrying out the trustee's duties under the Bankruptcy Code. Bankruptcy Code § 1107 gives the debtor-in-possession all the rights, powers and duties of a trustee, with limited exceptions not relevant here.

Bankruptcy Code § 541 provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) … all legal and equitable interest of the debtor in property as of the commencement of the case.

11 U.S.C. § 541 (2009).

An individual debtor and his estate are separate entities.  *In re Cooley*, 87 B.R. 432, 437 (Bankr. S.D. Texas 1988).  It is immaterial that the individual debtor is an individual chapter 11 debtor acting as debtor-in-possession.  *Id.*  Generally, the confirmation of the plan vests all of the property of the estate in the debtor.  Bankruptcy Code § 1141(b).

### *1. Plaintiff was Debtor and Debtor-in-Possession in the lead case*

"[R]epresenting a debtor's bankruptcy estate in an individual chapter 11 is almost an out-of-body experience.  … It stretches the bounds of legal fiction to comprehend the difference between the bankruptcy estate of an individual (your client) and the individual himself (not your client)."  *Ghosts of Individual Chapter 11 Debtors: Ethical Issues in Representing Debtors in Individual Chapter 11s Under BAPCPA: Part I*, C.R. "Chip" Bowles Jr., American Bankruptcy Institute Journal, December 2006-January 2007.

It is well settled that, even where the debtor is an individual, the chapter 11 debtor is an entity different from the chapter 11 debtor-in-possession, with different interests in property and different duties.   *See Cooley*, 87 B.R. at 445 (debtor could exempt post-petition earnings from property of the estate pursuant to 11 U.S.C. § 541(a)(6)).

The debtor-in-possession bears a fiduciary duty to the estate and to creditors.  *See In re Harp*, 166 B.R. 740, 746 (Bankr. N.D. Ala. 1993) (Chapter 11 debtors had fiduciary duty to unsecured creditors, which required them to act in the capacity of a bankruptcy trustee).

### *2. Defendant's role was adjudicatory*

The chapter 11 trustee must protect and preserve property of the estate for the purpose of maximizing a distribution to creditors, and owes a fiduciary duty to the creditors of the estate.  *In*

*re Ngan Gung Restaurant*, 254 B.R. 566, 571 (Bankr. S.D.N.Y. 2000) (chapter 11 trustee did not

breach fiduciary duty in allowing post-petition taxes to accrue); *cf. In re Kazis*, 257 B.R. 112

(Bankr. D. Mass. 2001) (chapter 7 trustee owed a duty to debtor to maximize value where there

was a chance creditors would be paid in full and debtor might receive money back).  The trustee

is not liable for objectively reasonable mistakes in judgment where discretion is allowed.  *In re

Ngan Gung Restaurant*, 254 B.R. at 571.

The Court considers the effect of Defendant's role in this case, which was to evaluate a

major asset of the estate, which in turn concluded years of litigation between Plaintiff and the

Longhitanos and the payment in full of all creditors' claims.  In *Antoine v. Byers & Anderson*,

508 U.S. 429 (1993), the United States Supreme Court examined two factors to determine

whether absolute immunity applied to a court reporter: 1. the historical context; and 2. whether

the judgments of non-judges are functionally comparable to those of judges in that the non-judge

exercise a discretionary judgment as part of his or her function.  *In re Continental Coin Corp.*,

380 B.R. 1, 9 (C.D. Calif. 2007) (*aff'd*, No. 08-0093, 2009 U.S. Dist. LEXIS 74392 (C.D. Calif.

Aug. 21, 2009) (interpreting *Antoine, supra*).  The court in *In re Continental Coin Corp.* found

that where a chapter 11 trustee did not accept an offer to purchase property of the estate, the

trustee was entitled to historical immunity and the sale of estate assets was an adjudicatory act.

*In re Continental Coin Corp.*, 380 B.R. at 9-11.  The trustee could be sued for gross negligence;

the court permitted the creditor to file a complaint for gross negligence.  *See also In re Gorski*,

766 F.2d 723 (2d. Cir. 1985) (where chapter 13 trustee failed to act upon debtors' missing 33

months' plan payments, such failure was a breach of fiduciary duty to creditors).

The Court considers whether the doctrine of immunity stretches to protect Defendants

from harassment and second-guessing by Plaintiff.  The Court is persuaded by *In re Continental*

*Coin Corp.* and analogizes the Defendant's role to that of a trustee.  The Defendants entered the Agreement with the Longhitanos and with Plaintiff ***acting in his capacity as debtor-in-possession***.  As discussed herein, the Engagement Letter, on which Plaintiff bases his Complaint, clearly was an agreement among Defendant, the Longhitanos, and Plaintiff as debtor-in-possession, which was approved by the Court, setting forth a task Defendant would perform for the benefit of the estate.  The Defendants were approved by the Court, without objection by the United States Trustee.  The Defendants' work caused the general unsecured creditors to be paid in full and concluded years of litigation between Plaintiff and the Longhitanos.  The appraisals were subject to review by all parties.  The Defendants' fees were approved after notice and a hearing.  Every act of Defendants has been done on complete and public disclosure and approved by this Court.  Therefore, Defendant performed an adjudicatory act similar to one that would be performed by a chapter 11 trustee, the sale of property of the estate for the benefit of creditors.

For purposes of this adversary proceeding, the Court will only consider the Defendants' potential liability for fraud, willful and deliberate acts that harm stakeholders of the estate, and gross negligence, as plead.

### 3. The Motion is one for judgment on the pleadings

The parties submit remarkably limited legal authority in support of the relief they seek. Defendants characterize the present motion as one for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which is made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b).  Plaintiff argues in opposition that the motion should be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56, which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

Fed. R. Civ. P. 12(c) provides, "**Motion for Judgment on the Pleadings.** After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The parties agree on the standard for such a motion, which the Court incorporates from Defendants' Motion: "In deciding a Rule 12(c) motion, Courts apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inference in favor of the nonmoving party. Accordingly, judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law."[3] *McClelland v. Grubb & Ellis Valuation and Advisory Group et al.*, No. 09-09014, Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Memorandum of Law in Support.

"[The court] should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief Consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, *__to matters of which judicial notice may be taken__*, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Faconti v. Potter*, 242 Fed. Appx. 775 (2d Cir. 2007) (citations omitted; emphasis added).

As on a motion to dismiss, the issue is not whether the plaintiff will prevail, but whether the plaintiff may present evidence to support the claims. The court must construe the factual allegations in the complaint liberally in favor of the plaintiff. The complaint must set forth sufficient information for the court to determine whether some recognized legal theory exists to permit relief to the plaintiff. 2 *Moore's Federal Practice*, § 12.34 (Matthew Bender 3d ed.).

---

[3] Fed. R. Civ. P. 12(b)(6) provides that a party may submit by motion the defense of failure to state a claim upon which relief may be granted.

Defendant relies on the Second Circuit's decision in *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), for the proposition that "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Memorandum of Law in Support. The Court may also consider matters of which the judge may take judicial notice. *Roberts v. Babkiwicz*, 2009 WL 3152113, *1 (2d Cir. Sept. 30, 2009) ("Because this matter comes to us on appeal from a judgment on the pleadings, we rely on the complaint, the answer, any written documents attached to them, ***and any matter of which the court can take judicial notice for the factual background of the case***") (emphasis added); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint. We may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken") (citations omitted); *Day v. Moscow*, 955 F.2d 807, 812 (2d. Cir. 1992) ("when all relevant facts are shown by the court's own records, of which the court takes notice, the defense [of *res judicata*] may be upheld on a Rule 12(b)(6) motion without requiring an answer"); 2 *Moore's Federal Practice*, § 12.34[2] (Matthew Bender 3d ed.).

Plaintiff references a "bankruptcy settlement," which can only be the Settlement that caused Defendants to be retained to appraise the Properties. The Court incorporates this Settlement for purposes of deciding a motion for judgment on the pleadings. The Settlement is integral to understanding the relationship of the parties and the purpose of the Engagement Letter, which, as discussed herein, was an agreement ***among*** the Plaintiff's estate, the Longhitanos, and the Defendants, with Court approval.

11

The Court takes judicial notice of the fact that general unsecured creditors were paid 100 percent of their claims by way of the Plaintiff's plan.

Plaintiff challenges Defendants' inclusion of all Orders and transcripts pertaining to Defendants' role and acts in this case, and argues that the inclusion of the same transforms the motion to one for summary judgment under Fed. R. Civ. P. 56. Plaintiff argues that the standard on a motion for summary judgment is that the movant may prevail only if it is shown to the satisfaction of the court that there is no genuine issue as to any material fact and that the moving party is entitle to judgment as a matter of law. Plaintiff reminds that Court that on a motion for summary judgment, the Court must accept all allegations in the complaint as true; and, since the Complaint alleges that Defendants were grossly negligent, the Court must accept as true the fact that Defendants were grossly negligent.[4]

Plaintiff further posits that whether negligence is gross negligence is a question of fact, which requires a jury trial. The Court rejects this argument. As discussed herein, a plaintiff cannot avoid a dispositive motion and guarantee itself a jury trial by tacking a claim of gross negligence to the back of the complaint.

The Court finds that the present motion is one for judgment on the pleadings. Plaintiff expressly referenced the Settlement and Engagement Letter, and the Court may take judicial notice of the confirmed plan in the underlying bankruptcy case for the simple and readily ascertainable fact that the Plaintiff's plan caused his creditors to be paid 100 percent of their claims. This information coupled with the factual allegations in the Complaint is all that the Court needs in determining whether Plaintiff is entitled to present evidence regarding whether

---

[4] Plaintiff's assertions in the Complaint that Defendants were grossly negligent is a legal conclusion. It is facts that the Court must construe in favor of the Plaintiff on a motion for summary judgment.

Defendants committed an act of gross negligence or fraud by using just one of the three denominated appraisal methods.

The Court declines to accept Plaintiff's invitation to debate the nuances of privity of contract, with regard to whether the provision of the Settlement governing finality of the Appraisal was binding on Defendants. All that is needed to determine the fate of the Complaint is the Settlement, the Engagement Letter, and the Complaint itself.[5]

### 4. Contract interpretation

Where the language of a contract is unambiguous, its interpretation is a matter of law. *Discovision Assocs. v. Toshiba Corp.*, No. 08cv3693, 2009 U.S. Dist. LEXIS 41662, *12 (S.D.N.Y. May 18, 2009). The court may consider the contract in its entirety to find that a particular clause is unambiguous. *Id.* at *22.

In *Discovision Assocs.*, the plaintiff and the defendant entered a license agreement, which also served as a "settlement of all outstanding controversies between the parties" concerning the subject matter of the agreement. *Discovision Assocs.*, 2009 U.S. Dist. LEXIS 41662 at *2-*3. The court considered whether entities formed by defendant and a third party were "subsidiaries" within the meaning of a clause of the agreement. The court stated that the meaning of the clause at issue would be determined in light of the entire agreement. *Id.* at *10. "A contract should be construed in accordance with the parties' purpose [and] a fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement." *Id.* at *12. "The language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

---

[5] The answer filed in this adversary proceeding consisted of denials or lack of knowledge to admit the truth of an allegation, and a list of affirmative defenses. The Court considers Defendants' answer on this Motion, but finds that it contains scant information to assist the Court in determining whether the Complaint should be dismissed.

integrated agreement." *Id.* To determine whether a clause is ambiguous, "the court must look to all corners of the document rather than view sentences or clauses in isolation." *Id.* at *13. The court in *Discovision Assocs.* considered numerous provisions of the agreement, including one expressing an intent to avoid litigation, and concluded that the agreement was not ambiguous. *Id.* at *26.

Here, the Plaintiff's claim centers on the Disputed Language, which states, "[Defendants] will use the income approach, the comparable sales approach and the replacement value approach, as [Defendants] deem each approach appropriate, in determining the fair market value of each property." Plaintiff argues that this language did not permit Defendants to pick a single approach "willy nilly," and that the use of the term "and" requires Defendants to have used all three approaches.

The Court reviews the four corners of the Engagement Letter, and the Settlement to illuminate the parties' intent in entering the Engagement Letter, and finds that the Disputed Language unambiguously permits the Defendants to use their discretion in valuing the property. It is clear from review of the Engagement Letter and the Settlement that Defendants were hired to perform work for the benefit of and in connection with the bankruptcy estate. The Engagement Letter was addressed to counsel for both Debtor and the Longhitanos, and it was agreed to and accepted by counsel for both Debtor and the Longhitanos. The Properties were to be valued as of July 29, 2004, which was two days after the Settlement was approved by Order of this Court. Just one-third of Defendants' fee was to be paid by Debtor; the other two-thirds were to be paid by the Longhitanos. According to the Engagement Letter, this Court was to be provided copies of the report, as well as Plaintiff and the Longhitanos. Defendants expressed their understanding that their employment was subject to approval by this Court, and that

14

Debtor's share of Defendant's expenses could only be paid upon approval of this Court.  Most
significantly, Defendants were hired as independent, neutral third parties to perform a task for
the bankruptcy estate.  It is clear that Defendants preserved their right to use their business
judgment and discretion in performing the appraisals.  Plaintiff's construction of the Disputed
Language forces Defendants into a relationship where Plaintiff and the Longhitanos could direct
and control Defendants' business judgment; this conclusion is contrary to all the other facets of
the agreements among the Plaintiff, the Longhitanos, and the Defendants, which were approved
by the Court.

### 5. Fraudulent misrepresentation

The Court notes that Plaintiff alleges that Defendants' representation in the Appraisal that
that highest and best use of the Disputed Properties was as rentals was a fraudulent and deceitful
misrepresentation, "made with the intent to deceive and for inducing reliance thereon by the
plaintiff, and the plaintiff was required to rely thereon by the constraints of the U.S. Bankruptcy
Court."  Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Exh. J,
¶ 27.  Given its obligation on a motion to dismiss, the Court construes this awkward pleading as
an attempt to allege a false misrepresentation.

The elements of a claim of false representations are: 1. defendant made a false or
misleading statement; 2 with intent to deceive; 3. in order for the plaintiff to turn over money or
property to the defendant.  *See Varble v. Chase (In re Chase)*, 372 B.R. 133, 137 (Bankr.
S.D.N.Y. 2007).  The false representation and intent to deceive must be contemporaneous when
pleading fraud.

In the case at bar, Plaintiff signed the Settlement on June 18, 2004, in which Defendants were named as the appraisers; the Engagement Letter is dated September 10, 2004, about three months after the Settlement was signed; and the Appraisal that Plaintiff alleges is relevant for purposes of fraud is dated January 27, 2005, more than four months after the Engagement Letter was signed. Defendants entered their agreement with Plaintiff seven months before making the allegedly fraudulent misrepresentation in the Appraisal. Plaintiff has failed to plead a contemporaneous misrepresentation and intent to deceive.

Even if a claim for fraudulent misrepresentation could stand against Defendants, and the relevant representation for purposes of a claim for false representation was the Engagement Letter, Plaintiff has failed to plead an intent to deceive with regard to this element. The disputed language of the Engagement Letter includes the phrase, "as [Defendants] deem each approach appropriate." Defendants expressly reserved their discretion in deciding how to appraise the Properties. Defendants entered the Engagement Letter with the Plaintiff as well as the Longhitanos, and the Engagement Letter was subject to Court approval. The purpose of the Engagement Letter and reasonable expectation of the parties was that years of litigation would be resolved, and that an asset of the estate would be valued for the benefit of the creditors.

In light of the Settlement and the Engagement Letter, the Court cannot hold that Plaintiff may present evidence that Defendants fraudulently promised to apply each of three valuation approaches, to induce the Plaintiff to enter the agreement. The evidence of the pleadings disproves any allegation that Plaintiff relief on the disputed language in the Engagement Letter when he hired Defendants. In the Settlement, which Plaintiff signed nearly three months before the Engagement Letter was prepared, Plaintiff had already agreed that Defendants would act as the Appraisers. Plaintiff did not rely on the disputed language in the Engagement Letter in hiring

the Defendants; he had already agreed to hire the Defendants months earlier when he signed the Settlement.  Therefore, the First Cause of Action must be DISMISSED.


### *6. Willful and deliberate acts*

The Court liberally construes the allegations of the Second Cause of Action and finds that Plaintiff attempts to allege a claim that Defendants committed willful and deliberate acts that harmed Plaintiff; this is a cause of action that may stand against a chapter 11 trustee.  Plaintiff alleges that Defendants "intentionally and wrongfully" concluded that the best use of the Disputed Properties was as rental units, and failed to "correct the wrongful methodology." Docket No. 29, Motion to Dismiss Case/Motion for Judgment on the Pleadings, Exh. J, ¶¶ 31-32.

"A bankruptcy trustee is personally liable in this circuit for deliberate or negligent acts or omissions which harm the bankruptcy estate.  … [A] trustee is not liable for objectively reasonable mistakes in judgment where discretion is allowed." *In re Ngan Gung Restaurant*, 254 B.R. 566 (Bankr. S.D.N.Y. 2000); *Mosser v. Darrow*, 341 U.S. 267 (1951) (trustee's employees profited from transactions with bondholders).  In the case at bar, Defendants were hired on agreement of Debtor and the Longhitanos, and performed the same role as a trustee might.  The Defendants expressly reserved for themselves discretion to choose the appropriate appraisal approach.  The "intentional and wrongful" act that Plaintiff complains of, the choice to appraise with a single approach, was an act done in Defendants' judgment.  Liability will not attach for Defendants' decision to appraise the Disputed Properties as rental properties, even if such decision was in error.  Therefore, the Second Cause of Action is DISMISSED.

### *7. Gross negligence*

Having established that Defendants had an agreement with Plaintiff's estate, the next question is whether Plaintiff as an individual may recover damages for allegedly grossly negligent conduct by Defendant in connection with its relationship with the Plaintiff's bankruptcy estate, which is a distinct and separate entity from Plaintiff individually. The first issue is whether Defendant, who was approved by this Court to perform an adjudicative function with respect to Debtor's bankruptcy estate, had a duty of care to Plaintiff individually. Under the guidance of *In re Continental Coin Corp.* and *In re Kazis*, and giving Plaintiff every benefit of the doubt on this motion for judgment on the pleadings, the Court will assume that the Defendants had a duty of care to Plaintiff individually to the extent necessary to support Plaintiff's being permitted to sue Defendants for gross negligence and willful harm.

The next question is whether Defendant's decision to determine the value of the Disputed Properties according to their existing use was a breach of their duty to Plaintiff that is so egregious and without the barest modicum of care so as to warrant a finding of gross negligence. Again, the Court notes that Plaintiff's claims depend upon the construction of the Disputed Language, "We will use the income approach, the comparable sales approach and the replacement value approach, as we deem each approach appropriate, in determining the fair market value of each property." As noted above, in construing this clause, the Court may consider the four corners of the Engagement Letter and the parties' purpose in entering the agreement.

Even under the broad standard of the motion to dismiss or for judgment on the pleadings, a plaintiff must allege sufficient facts to support a claim for relief. Courts frequently grant motions to dismiss on the ground that plaintiff has not plead facts to support a claim of gross

negligence, which differs in kind, not only degree, from ordinary negligence and is conduct that shows a reckless disregard for the rights of others or smacks of intentional wrongdoing. *See Colnaghi, USA. v. Jewelers Protection Servs., Ltd.*, 81 N.Y.2d 821, 823-824 (N.Y. 1993) (citations omitted) (emphasis added) (alarm company's motion for summary judgment was granted; failure to wire a skylight which resulted in theft of artwork was not gross negligence). "Under New York law, recklessness is more than ordinary negligence, more than want of ordinary care. Indeed, the word implies a substantially greater degree or grosser form of negligence ... ***desperately heedless, as from folly, passion or perversity, impetuosity or rashly adventurous***." *Tevdorachvili v. Chase Manhattan Bank*, 103 F.Supp.2d 632, 644 (E.D.N.Y. 2000) (citations omitted; emphasis added) (claim for gross negligence was dismissed; plaintiff had only alleged breach of contract). *See also Meyer v. Zubak*, No. 97-1393, 2000 U.S. Dist. LEXIS 1216 (S.D.N.Y. Feb. 8, 2000) (where party alleged counterclaim for gross negligence and failed to allege a cognizable duty of care, counterclaim was dismissed); *Industrial Risk Insurers v. Port Authority of New York and New Jersey*, 381 F.Supp.2d 299 (S.D.N.Y. 2005) ("New York courts are unwilling to let cases with releases of liability go to a jury on the issue of gross negligence simply because plaintiff has added a conclusory allegation of gross negligence to a cause of action;" court dismissed claim for gross negligence, where it was alleged that building trusses could not withstand heat from ignited fuel tanks).

It is clear that Plaintiff as an individual was not a party to the agreement memorialized in the Engagement Letter. Defendants were approved by the Bankruptcy Court to perform a task for the benefit of Debtor's estate as a whole, not for Plaintiff's personal gain.

Plaintiff admits in ¶¶ 12 and 13 of the Complaint that Defendants relied on a proven and ongoing use of the property – rental units generating income – to estimate the value for purposes of the Appraisal:

> 12. All of the two bedroom duplexes were, at the time of the appraisal, being managed as rentals.
> 13. In its appraisal report dated January 27, 2005, the defendants concluded that the existing rental use was the highest and best use.

In ¶ 15 of the Complaint, Plaintiff alleges, "The defendants did not set forth in its appraisal report any opinion as to the valuation of [the Disputed Properties] as individual saleable units."

The decision to appraise an income-producing property according to its actual use as an income-producing property does not strike this Court as a shocking, perverse, or rash act as to warrant a finding of gross negligence. The conduct of Defendants does not begin to rise to the standard of such a claim. Plaintiff admits in the Complaint that the properties were appraised according to their present use. Defendants expressly reserved the right to use their discretion in applying the appraisal approaches in the disputed language. Plaintiff fails to make any allegations in the complaint that "as we deem each approach appropriate" had a meaning other than that Defendants would apply their expertise and discretion as professional appraisers when performing the appraisals. Therefore, the Third Cause of Action must be DISMISSED.

The Court has examined the Fourth Cause of Action, which appears to be a claim for gross negligence with regard to the Appraisal in its entirety. For all of the foregoing reasons, and for the reason that there are no factual allegations to support a finding that each of the remaining Properties were improperly appraised, the Court finds that the Fourth Cause of Action is without merit and as such must be DISMISSED.

### *CONCLUSION*

In this matter, the Defendants took on the role that a chapter 11 trustee might perform, for the work they performed in administering an asset of the estate, which contributed to the achievement of a 100 percent plan.  As such, the Defendants are immune from suit, other than for claims of gross negligence and willful and deliberate harm.  The act complained of, Defendants' choice to appraise a property only according to its existing use, having reserved their discretion to do so, does not rise to the level of egregious and culpable conduct to support such claims.  Therefore, the Complaint is DISMISSED.

Defendants shall submit an order consistent with this opinion.


Dated: Poughkeepsie, New York
          October 16, 2009

                                          /s/ Cecelia Morris
                                          The Hon. Cecelia G. Morris
                                          U.S. Bankruptcy Judge