*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

In re John S. McClelland,

      Debtor.

Chapter 7

Case No. 03-37997

-------------------------------------------------------X

John McClelland,

      Plaintiff,

   -against-

Grubb & Ellis Valuation and Advisory Group,

      Defendant.

Adv. P. No. 07-9014

-------------------------------------------------------X

## APPEARANCES:

Leonard Spielberg
Harold, Salant, Strassfield & Spielberg
81 Main Street
White Plains, NY 10601
*Attorneys for Plaintiff*

Lance Portman
McCabe & Mack LLP
63 Washington Street
P.O. Box 509
Poughkeepsie, NY 12602
*Attorneys for Defendant*

## MEMORANDUM DECISION FINDING MATTER TO BE CORE

At the hearing held on August 12, 2011, the Court directed the parties to brief the issue of whether Plaintiff has a right to a jury trial in district court, in light of the Supreme Court's recent decision in *Stern v. Marshall*. 564 U.S. ___, 131 Sup. Ct. 2594 (2011). Having reviewed the parties' arguments, the Court reaffirms its reasoning in its Memorandum Decision dated October 26, 2007, and holds that the present proceeding arises in the bankruptcy case and is a core matter. The subject matter of the present adversary proceeding concerns work performed for the benefit of the estate by an estate professional, and implicates a court-ordered settlement, the confirmation order, and the order approving the professional's fees. The Court has the power to enter final orders in the present proceeding, at least up until the time the case becomes trial ready. If and when this proceeding reaches that point, the parties may reply to each others' memoranda of law submitted with respect to this ruling, to address whether the request for a jury trial was timely and whether Plaintiff has consented to a jury trial in this Bankruptcy Court.

## *Introduction*

Plaintiff commenced his chapter 11 case on December 19, 2003. Defendant is a real estate appraiser retained by court order dated September 28, 2004, as an estate professional. Defendant's appraisal of the value of real property owned by the Plaintiff was at the heart of a settlement with Plaintiff's former business partners, in which the former partners paid the Plaintiff's estate one-third of the

appraised value—which was used to fund a plan that paid 100 percent of allowed claims. The Defendant's appraisal was authorized by a stipulation of settlement between the Plaintiff and the former partners, which was approved by order dated July 27, 2004, and by the order retaining the Defendant as an estate professional. The Plaintiff's plan was confirmed by court order dated August 24, 2005; the plan was predicated upon the appraisals conducted by the Defendant.

The Court approved Defendant's fees by order dated February 1, 2006. The approved fees represent the Plaintiff's one-third share of the cost of the Defendant's services. The Plaintiff opposed the motion to approve fees, arguing that the Defendant improperly appraised the real property, resulting in a lower valuation and an accordingly lower payment to the debtor. Presumably, Plaintiff seeks damages on the grounds that if the property had been appraised at a higher value, there would have been money left over for the Plaintiff personally, after the allowed claims were satisfied. In approving the fees, the Court made no determination regarding whether the Plaintiff could sue the Defendant. *See Memorandum Decision*, October 26, 2007, at 18. Further, the Court rejected the Plaintiff's request to treat its objection to the fee application as a "counterclaim," on account of the Plaintiff's failure to cite law in support of such relief. *Id.* at 17. Subsequently, on November 28, 2006, the Plaintiff commenced the present lawsuit in state supreme court.

The Court incorporates the procedural history set forth in the Memorandum

Decision Denying Motion to Remand or Abstain dated October 26, 2007:

> The Debtor commenced this action in New York State Supreme
> Court, Ulster County, against the Defendants (collectively, "Grubb &
> Ellis" or "G&E"), alleging damages of $1 million arising from an
> appraisal that Grubb & Ellis prepared while retained by this Court as a
> professional of the bankruptcy estate.
>        The Defendants removed the case to the United States District
> Court, alleging that the case is a core proceeding within the meaning
> of 28 U.S.C. § 157(b) "because, among other things, it is inextricably
> and intimately related to the administration of the estate in the
> Bankruptcy Case." … The case was transferred to this Court from the
> District Court, by stipulation of the parties.

*Memorandum Decision*, Adv. P. No. 07-09014, Docket No. 20, 2. Plaintiff

disputed that the adversary proceeding was core, and moved for the Court to

remand the matter to state court or to abstain. The Court denied the removal

motion, holding: "Where an estate professional is retained and paid by order of the

Bankruptcy Court to perform work that is vital to the bankruptcy estate and the

debtor's plan or reorganization, a subsequent claim against that professional arising

from the work performed on behalf of the estate is a 'core proceeding' pursuant to

28 U.S.C. § 157(b)." *Id.*

By decision dated October 16, 2009, the Court granted Defendant's motion

for judgment on the pleadings and dismissed all claims. On appeal, the district

court upheld in part and reversed in part. The district court characterized Plaintiff's

claims as being for intentional misconduct and gross negligence. *Copy of*

*Memorandum & Order of U.S. District Court Judge Barbara S. Jones Signed on 6/24/2011*, Adv. P. No. 07-09014, Docket No. 40, at 8-9. The court found that the bankruptcy court correctly dismissed the cause of action for fraudulent misrepresentation. *Id.* at 9. The district court found that the Bankruptcy Court incorrectly dismissed the claims for gross negligence and intentional wrongdoing, with respect to a property referred to as the "Hudson Valley Landing property" or the "Hudson Valley property," which consisted of 33 two-family homes, each with its own fee simple parcel of land, and each managed at the time as rental units. *See id.* at 4, 13. The district court stated:

> Given the sparse allegations put forth in the complaint, this is a "close case" as to whether Plaintiff has adequately plead claims of gross negligence and intentional wrongdoing. But for the allegation that Plaintiff alerted Defendants to errors in the report and Defendants still refused to reconsider the appraisal of the Hudson Valley property or provide a sufficient analysis for its conclusion, Plaintiff's claim would likely fail to meet the plausibility standard for anything beyond ordinary negligence. However, accepting these allegations as true, the Court finds that Plaintiff has plead facts that could lead a reasonable juror to believe that Defendant's conduct was intentional, willful or reckless in its disregard of Plaintiff's rights.

*Id.* at 14.

On July 20, 2011, after the proceeding was remanded to this Court, Plaintiff's counsel filed a demand for a jury trial on the bankruptcy court's docket of the present adversary proceeding. *Statement/Plaintiff's Jury Demand With Proof of Service*, Adv. P. No. 07-09014, Docket No. 41.

## _Power of the bankruptcy court_

Bankruptcy jurisdiction is established in 28 U.S.C. § 1334:

**Bankruptcy cases and proceedings**
(a)     Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b)     Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
. . . .
(e)     The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

28 U.S.C. § 1334. In bankruptcy, there are three types of subject matter jurisdiction regarding adversary proceedings: arising under title 11, arising in cases under title 11, and related to cases under title 11. 11 U.S.C. § 1334(b); _In re Casual Male Corp._, 317 B.R. 472, 475 (Bankr. S.D.N.Y. 2004). _Cf._ Ronald R. Peterson, _Stern v. Marshall: Bleak House Revisited_, 27 NABT-Talk: Journal of the National Association of Bankruptcy Trustees, 10, 12 (2011) (describing three bases of subject matter jurisdiction). "Arising under" jurisdiction relates to federal question claims of a particular type—specifically, those federal questions that have their origin in the Bankruptcy Code and where relief is sought based upon a right created by title 11. _Casual Male_, 317 B.R. at 475-476. A matter "arises in"

bankruptcy if the claim can only be brought in a bankruptcy case because it has no existence outside bankruptcy. *Id.* at 476 (noting that other decisions state a broader description, where the matter would not exist but for the bankruptcy). Matters are "related to" the bankruptcy if they would have a "conceivable effect" on the bankruptcy estate. *Id.*

"Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judge for the district." 28 U.S.C. § 157(a). "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under [28 U.S.C. § 158]." 28 U.S.C. § 157(b)(1). A non-exhaustive list of "core" proceedings is set forth in 28 U.S.C. § 157(b)(2). Before the Supreme Court's ruling in *Stern v. Marshall*, it was understood that a "core matter" either arose under or arose in a bankruptcy case. Peterson, *supra*, at 12.

### ***Recent developments in the analysis of the bankruptcy court's power to enter a final order***

In *Stern v. Marshall*, the Supreme Court held that one kind of "core" proceeding, that of counterclaims of the estate against parties filing proofs of claim, was unconstitutional in that it violated the separation of powers doctrine.

The Court ruled that the bankruptcy court, an Article I court, did not have the power to determine the debtor's pre-petition, state-law cause of action for tortious interference with a gift, asserted against a creditor, where that cause of action was not fully adjudicated in the process of allowing the creditor's claim for defamation. The Court determined that such a common law claim should have been determined by an Article III court, which preserves the impartiality of its judges with life tenure and non-diminution of salary during good behavior.

*Stern* rested heavily on *Northern Pipeline Construction Company v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ("*Marathon*") and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ("*Granfinanciera*"). In *Marathon*, the Court determined that the scheme setting the judicial power of the bankruptcy court was unconstitutional—bankruptcy judges were given power to adjudicate state-created private rights, even where those lawsuits were not involved in the restructuring of debtor-creditor relations, without Article III protections of life tenure and non-diminution of salary. *See Marathon*, 458 U.S. at 84 ("the cases before us, which center upon appellant Northern's claim for damages for breach of contract and misrepresentation, involve a right created by state law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court."). The narrowest construction of *Marathon* may be summarized as, "a 'traditional' state common law action, not made subject to a federal rule of

decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an 'Art. III court' if it is to be heard by any court or agency of the United States." *Southmark Corporation v. Coopers & Lybrand LLP (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) (citing *Marathon*, 458 U.S. at 92 (Burger, C.J., dissenting)). Similarly, in *Granfinanciera*, the Court held that a defendant who had not filed a proof of claim was entitled to a jury trial, even though the claim was core—the cause of action accrued pre-petition, was grounded in common law, and the third party had not consented to the jurisdiction of the bankruptcy court or waived its right to a jury trial, as it had not filed a proof of claim. *See Granfinanciera*, 492 U.S. at 58.

Since *Stern*, federal courts have renewed their examination of the power of the bankruptcy court to enter a final order in a lawsuit grounded in state law. The work is compounded by the failure of the Supreme Court to definitively rule that the bankruptcy court is empowered by the "public rights" doctrine to make final adjudications regarding matters that are fundamentally concerned with the restructuring of debtor-creditor relations. It appears that the core vs. non-core distinction has largely survived *Stern*. *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011) ("[w]e do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the

current statute"); *see also Walker, Truesdell, Roth & Assocs. v. The Blackstone Group, L.P. (In re Extended Stay)*, No. 09-13764, 2011 WL 5532258, at *6 (S.D.N.Y. Nov. 10, 2011) ("Withdrawing the reference simply due to the uncertainty caused by *Stern* is a drastic remedy that would hamper judicial efficiency on the basis of a narrow defect in the current statutory regime identified by *Stern*."). An additional analysis of the proceeding's connection to the bankruptcy and whether public or private rights are at stake is now required to determine whether the bankruptcy court has the power to adjudicate the matter.

In *In re BearingPoint, Inc.*, Case No. 09-10691 (Bankr. S.D.N.Y. July 11, 2011), the bankruptcy court allowed the liquidation trustee of the confirmed debtor relief from the part of the confirmation order that required claims against former officers and directors of the debtor to be brought in the bankruptcy court. The bankruptcy court determined that the prospective claims for pre-petition breach of fiduciary duty were not "core." *Id.* at 8. The court perceived that there was potential for litigants to "tie the case up in knots" by "exploiting their rights to an Article III judge determination when litigation against them is non-core." *Id.* at 14. Further, the court expressed concern that, in the wake of *Stern*, even unequivocal consent might not be enough to empower the bankruptcy court to enter a final judgment in a non-core matter. *Id.* at 16-17.

In *In re Salander O'Reilly Galleries*, this Court denied a creditor's motion for relief from the stay for the purpose of pursuing arbitration, as the creditor's rights in an asset could be fully resolved in the claims allowance process. The Court noted, "[n]owhere in *Marathon*, *Granfinancera*, or *Stern* does the Supreme Court rule that the bankruptcy court may not rule with respect to state law when determining a proof of claim in the bankruptcy, or when deciding a matter directly and conclusively related to the bankruptcy."

In *Retired Partners of Coudert Brothers Trust v. Baker & McKenzie (In re Coudert Brothers)*, App. Case No. 11-2785 (S.D.N.Y. Sept. 23, 2011), the district court determined that the bankruptcy court did not have jurisdiction to dismiss the Plaintiffs' state law claims against private parties—and converted the bankruptcy court's ruling into a report and recommendation of dismissal, which would be reviewed *de novo*. In crafting this solution to the "procedural morass," the district court stated, "the intent behind the [1984 Act] is clear: Congress wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III permitted them to do so, and to issue recommended findings subject to *de novo* review in the District Court whenever it did not." *Id.* at 22. Notably, regarding the determination of the bankruptcy court's authority to make final adjudications, the district court framed the issue as whether the claim to be adjudicated involves a "public" or a "private" right. *Id.* at 12. The district court

construed *Stern* to have held, "[b]ankruptcy courts can constitutionally make final determinations with respect to private rights when those rights are necessarily fully disposed of in ruling on a proof of claim." *Id.* at 15. Further, the district court construed *Stern* to permit consent as a sufficient basis for Article I final adjudication of non-core matters. *Id.* at 18.

## 1. The matter is a core proceeding, and the Bankruptcy Court has power to enter final orders.

The issue is not whether the district court can determine the claims in the proceeding at bar. The jurisdictional statute of bankruptcy law, 28 U.S.C. § 1334, vests jurisdiction of bankruptcy cases and proceedings in the district court, and was undisturbed by *Stern*. Indeed, in *Marathon*, the Court held that a breach of contract claim against a nonparty to the bankruptcy could be adjudicated on the basis of its relationship to the bankruptcy. *Retired Partners of Coudert Brothers Trust*, App. Case No. 11-2785 at 23 (discussing *Marathon*). The question is whether, after referral of cases and proceedings from the district court, the bankruptcy court has the power to enter a final order in a particular proceeding, not whether it would be better for the proceeding to be decided in another forum. The bankruptcy court must examine the nature of the proceeding, beyond whether it appears on the list of "core" proceedings, and determine whether there is a sufficient connection to the

restructuring of debtor-creditor relations that the matter can be finally decided by the bankruptcy court.

In the matter at bar, the Plaintiff characterizes its claim for gross negligence as a "counterclaim" to the Defendant's fee application, and argues that it is therefore within the realm of proceedings the *Stern* Court held could not be finally adjudicated by a non-Article-III court. The Court reaffirms its rejection of Plaintiff's characterization of the objection to the fee application as a counterclaim. As before, Plaintiff offers no argument to support its legal conclusion that its alleged claim for gross negligence is a counterclaim to a fee application. "Counterclaims are affirmative claims for relief, usually asserting a right to payment by a defending party in opposition to the claims of the plaintiff or other opposing party." 3 *Moore's Federal Practice*, § 13.90[1] (Matthew Bender 3d ed.). A fee application is the process by which an estate professional is granted permission to partake of the distribution of property of the estate for work done for the estate. It is part of the claims allowance process, as estate professionals hold high-priority administrative claims against the estate for the work they do post-petition. In filing the fee application, the Defendant sought payment from the estate; it did not assert a cause of action against the Plaintiff personally or individually, which might have permitted the characterization of the present claim for gross negligence as a "counterclaim."

Even if the present claim could be characterized as a counterclaim, it is not within the scope of the statute partially invalidated by *Stern*. The Court found unconstitutional 28 U.S.C. § 157(b)(2)(C), which states that core proceedings include counterclaims ***by the estate*** against persons filing claims against the estate. 28 U.S.C. § 157(b)(2) (emphasis added). In the matter at bar, Plaintiff's "counterclaim" is asserted by the Plaintiff personally, for alleged damages suffered individually, against a retained bankruptcy professional. In its decision granting the motion for judgment on the pleadings, this Court clearly stated that Plaintiff was suing in his individual capacity, not as debtor-in-possession for the benefit of the estate. This part of the ruling was undisturbed by the district court on appeal. The Plaintiff's claim for gross negligence is a personal claim, not a claim of the estate.

Regarding Plaintiff's argument that its claim could stand alone from the bankruptcy, the Court is persuaded by *Southmark Corporation v. Coopers & Lybrand LLP (In re Southmark Corp.)*, 163 F.3d 925 (5th Cir. 1999), that the claim is inextricably intertwined with the bankruptcy. Plaintiff relies on *Granfinanciera*, arguing that if the fraudulent conveyance claim in that case were not "public rights," then the "garden variety" claims asserted in the present lawsuit surely are not "public rights." This exact argument was rejected by the Fifth Circuit in *Southmark*. "A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under

superintendence of the bankruptcy court; it cannot stand alone." *Southmark Corp. v. Coopers & Lybrand (In Re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999). For that reason, *BearingPoint* is distinguishable from the matter at bar, because the claims in that case were pre-petition, non-core claims. Further, in *BearingPoint*, there was a question of gaining jurisdiction over some of the prospective Defendants, who were located in Virginia. Here, there is no question of this Court's *in personam* jurisdiction over the parties. Despite Plaintiff's repeated challenges to the Court's power in the present adversary proceeding, the Court cannot imagine a louder consent to adjudication in bankruptcy court than filing a bankruptcy petition, confirming a plan that vests exclusive jurisdiction over all adversary proceedings in the bankruptcy court, and accepting the discharge—all of which were done by the Plaintiff in his bankruptcy case.

The present adversary proceeding is a core proceeding. *See Memorandum Decision*, October 26, 2007, 12-15. The Plaintiff sued an estate professional retained by order of the bankruptcy court and compensated from the bankruptcy estate, on a claim grounded on work performed for the bankruptcy estate. *Id.* at 12. The lawsuit concerns administration of the estate, as it implicates the work done for the estate by court-appointed and court-approved professionals. *See id.* at 13; *see also* 28 U.S.C. § 157(b)(2)(B). The Court is guided in this ruling by *Southmark Corporation v. Coopers & Lybrand LLP (In re Southmark Corp.)*, 163 F.3d 925

(5th Cir. 1999), the circuit court held that claims for breach of fiduciary duty asserted by debtor against estate accountants for work done for the estate were core claims. In *Southmark*, the defendants were retained by the bankruptcy court as accountants to the estate's court-appointed examiner; the accountants failed to disclose the extent of the work they performed for the entity they had been retained to investigate. The debtor argued that its claims against the estate accountants were not core, as they arose under state law and involve the debtor's private rights against the accountants, rather than "restructuring debtor-creditor relations." *Id.* at 930. Further, the debtor denied that the claims could arise only in the context of a bankruptcy case, as it could have sued any accounting firm that worked for it on similar grounds of disloyalty, nondisclosure and malpractice. *Id.* at 930- 931.

The circuit court rejected the debtor's arguments, stating that the professional malpractice claims alleged against the estate accountants were inseparable from the bankruptcy context. *Id.* at 931. The court stated, "A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors." *Id.*

In the matter at bar, Defendant interprets the holding of *Stern* to be expressly limited to 28 U.S.C. § 157(b)(2)(c) (counterclaims of the estate are core); the other

examples of core proceedings are unaffected. Accordingly, the Defendant argues, as this Court previously held the matter to be core pursuant to §157(b)(2)(B) (administration of estate is core), *Stern* does not obligate the Court to undo its prior determination.

The Court agrees that *Stern* has a narrow application; the Court disagrees with the suggestion that analysis of how the matter relates to the restructuring of the debtor-creditor relationship is not necessary in light of *Stern.* The Court finds the reasoning of *Southmark* to have survived *Stern*.

## 2. A decision on the proper forum for a jury trial is premature.

In the Southern District of New York, bankruptcy courts may conduct jury trials. "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 11 U.S.C. § 157(e). By order dated December 7, 1994, the United States District Court for the Southern District of New York specially designated the bankruptcy judges of the district to conduct jury trials pursuant to 28 U.S.C. § 157(e). *See* General Order M-139, available at http://www.nysb.uscourts.gov/.

Federal Rule of Bankruptcy Procedure states in its entirety:

**Rule 9015. Jury Trials**

**(a) APPLICABILITY OF CERTAIN FEDERAL RULES OF CIVIL PROCEDURE.** Rules 38, 39, 47-49, and 51, F. R. Civ. P., and Rule 81(c) F. R. Civ. P. insofar as it applies to jury trials, apply in cases and proceedings, except that a demand made under Rule 38(b) F. R. Civ. P. shall be filed in accordance with Rule 5005.

**(b) CONSENT TO HAVE TRIAL CONDUCTED BY BANKRUPTCY JUDGE.** If the right to a jury trial applies, a timely demand has been filed pursuant to Rule 38(b) F.R.Civ.P., and the bankruptcy judge has been specially designated to conduct the jury trial, the parties may consent to have a jury trial conducted by a bankruptcy judge under 28 U.S.C. § 157(e) by jointly or separately filing a statement of consent within any applicable time limits specified by local rule.

**(c) APPLICABILITY OF RULE 50 F. R. CIV. P.** Rule 50 F. R. Civ. P. applies in cases and proceedings, except that any renewed motion for judgment or request for a new trial shall be filed no later than 14 days after the entry of judgment.

Local Bankruptcy Rule 9015-1 states, "A statement of consent to have a jury trial conducted by a Bankruptcy Judge under 28 U.S.C. § 157(e) shall be filed not later than 14 days after the service of the last pleading directed to the issue for which the demand was made."

"Bankruptcy courts may conduct jury trials in core proceedings." *Ben Cooper, Inc. v. The Ins. Co. of the State of Pa. (In re Ben Cooper)*, 896 B.R. 1394, 1402 (2d Cir. 1990). In *Ben Cooper*, the Second Circuit determined that a claim for breach of contract that arose post-petition was a core matter, noting, "Post-petition contracts with the debtor-in-possession … are integral to the estate administration from the date they are entered into." *Id.* 1399; *see also In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir. 1987). Regarding the appellate scheme set

out in 28 U.S.C. sections 157 and 158, the Second Circuit ruled, "[s]ince the jury

verdict in a core proceeding is subject only to the traditional standards of appellate

review, such proceeding does not violate the Seventh Amendment." *Ben Cooper*,

896 F.2d at 1403. The Second Circuit assumed that section 157(b) was

constitutional, in light of Article III. *Id. Ben Cooper* was decided before section

157(e) was adopted; now, the relevant legal questions are whether the jury demand

was timely and whether the parties expressly consent to a jury trial in bankruptcy

court, not whether the bankruptcy court has the power to conduct a jury trial.

The Court reconsiders its ruling made on the record of the hearing held on

October 26, 2011. *See In re Global Link Telecom Corp.*, 2002 Bankr. LEXIS 1189

at *5 n.3  (Bankr. D. Del. Oct. 22, 2002) ("Courts have discretion to *sua sponte*

reconsider their rulings") (citing cases). A final determination of what court should

conduct the jury trial in the present case is not ripe, as the matter has not been fully

briefed, and the matter is not trial-ready. *See McCord v. Papantoniou*, 316 B.R.

113 (E.D.N.Y 2004) (denying motion to withdraw the reference in a core matter);

*Walker, Truesdell, Roth & Assocs. v. The Blackstone Group, L.P. (In re Extended*

*Stay)*, No. 09-13764, 2011 WL 5532258, at *4 (S.D.N.Y. Nov. 10, 2011) (denying

motion to withdraw the reference; "permissive withdrawal to take the case to a

district court for trial by jury, on asserted Seventh Amendment grounds, will

become a question ripe for determination if and when the case becomes trial-

ready."); *Nattel, LLC, v. Oceanic Digital Commc'ns (In re Nattel, LLC)*, No. 06-50421, 2010 WL 2977133, at *2 (D. Conn. July 22, 2010) ("Even in a case in which a jury trial right is clearly established, a district court may conserve judicial resources by permitting the bankruptcy court to conduct discovery and rule on pre-trial motions; the district court becomes involved, if necessary, only when it is clear that the case is going to require a jury trial.").

In the memoranda of law, the Plaintiff argued that his jury demand was timely, and Defendant argued that Plaintiff expressly consented to a jury trial in this Court. The parties should have the opportunity to reply to each others' briefs. Therefore, if and when the adversary proceeding becomes trial ready, the Court will set a date by which reply papers may be filed by the parties.

## *Conclusion*

The present adversary proceeding is a core proceeding, pursuant to 28 U.S.C. sections 157(b)(2)(A) and (O), and the reasoning set forth in *Southmark* and the Memorandum Decision entered in this proceeding on October 26, 2007. The Bankruptcy Court has the power to enter final orders in this matter, at least up to the time the case becomes trial-ready. The Court will set a schedule for the parties to reply to each others' briefs and address whether the jury demand was timely and whether Plaintiff expressly consented to jury trial in this Court, at a subsequent status conference.

Counsel to the Defendant shall submit an order consistent with this decision.


Dated:        December 9, 2011
              Poughkeepsie, New York


                                        _/s/ Cecelia G. Morris_
                                        Hon Cecelia G. Morris
                                        U.S. Bankruptcy Judge